**In re SLUMBERLAND BEDDING CO., Inc.**

**No. 10368.**

United States District Court
D. Maryland.
Sept. 29, 1953.

Edward Azrael, Baltimore, Md., for debtor.

Louis J. Sagner, Baltimore, Md. for objecting creditors.

CHESNUT, District Judge.

The present case presents the question whether the order of the referee confirming an "arrangement" under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., should be affirmed. The order of the referee affirmatively found that the debtor proposing the arrangement had met the statutory requirements for confirmation prescribed in section 366 of the Bankruptcy Act, 11 U.S.C.A. § 766. Three unsecured creditors having claims aggregating about $2,500 have filed a petition for review. Counsel have been heard orally on the petition and their briefs have been carefully considered. My conclusion is that the order of the referee should be affirmed.

The debtor is the Slumberland Bedding Co., Inc., a Maryland corporation. It was formed June 19, 1952 and started business with evidently insufficient capital of only about $13,000. In less than a year of activity and at the time of filing the petition for an "arrangement" on April 28, 1953 it was clearly heavily insolvent having assets, by its amended schedules, of only $42,250.79 with liabilities of $85,551.22. The appraisal of the assets valued them at at least several thousand dollars less than $42,250.

The liabilities of $85,551 consisted of wage claims in the amount of $3,369; taxes due the United States $4,184, and taxes due the State of Maryland $967.47. There were secured claims in the amount of $23,854 and unsecured claims in the amount of $53,134.

The plan of arrangement was in short substance that one Nathan Rosenbloom, a brother of Harry Rosenbloom, the president and principal stockholder of the debtor, agreed to purchase at par a sufficient amount of common stock of the debtor to pay a dividend of 20% to all unsecured creditors as "complete and final satisfaction of all unsecured claims", and that the present management remain the same with the debtor continuing in business under court supervision until such payment is made. The sum necessary to pay such 20% dividend has been deposited subject to the order of counsel for the debtor and is available for immediate distribution to creditors in the event of an affirmance of the referee's order. Likewise the sum of $9,200 has been deposited subject to the order of the referee for the payment of all taxes, wage claims and costs of administration.

It is at once evident from the figures stated that the corporation is hopelessly insolvent and that upon liquidation, as would be the case in ordinary bankruptcy, there is no reasonable probability that the unsecured creditors will receive a dividend even approximating 20%. This is not disputed by counsel for the three unsecured creditors seeking a reversal of the referee's order. Their stated position is that, despite the fact that if the plan is not confirmed, they will receive probably less than 20%, nevertheless they oppose the confirmation of the plan on the ground that the business of the debtor has been so loosely, if not fraudulently, managed that they prefer as a matter of principle to object to the confirmation of the plan with the hope that in ordinary bankruptcy other proceedings might follow which would demonstrate that, as they put it, such a badly conducted business should not be per-

mitted to continue. This objection seems to be based on the legal contention that the term "feasible", one of necessary characteristics of the plan to be found in the event of confirmation, means more than merely that the plan itself is assured of being carried out successfully. I will discuss this somewhat more fully.

At the outset I think it is appropriate to note that Chapter XI of the Bankruptcy Act was intended to provide a method by which an insolvent debtor would be permitted to continue in business provided the plan or arrangement therefor made adequate provision for the interests of unsecured creditors. In this respect at least it would appear that Chapter XI was intended to be in the nature of a substitute for the provision for a "composition" which was a feature of the ordinary bankruptcy act.

After the debtor's petition was filed it was referred by order of court in due course to the referee for hearing. Pursuant to the procedure required by title 11 the referee gave notice to interested parties and held extensive hearings at which much testimony was submitted. He found without contradiction here that, as required by 11 U.S.C.A. § 762, the plan had been accepted in writing by a majority in number of all creditors affected by the arrangement, whose claims had been proved and allowed before the conclusion of the meeting, and that the number so accepting represented a majority in amount of such claims. The referee was not requested to divide the unsecured creditors into classes at the time and there was apparently no sufficient reason presented to him for doing so.

The additional requisites for confirmation of the arrangement provided for by 11 U.S.C.A. § 766, as amended July 7, 1952, ch. 579, § 35, 66 Stat. 433, are—

"The court shall confirm an arrangement if satisfied that—

"(1) the provisions of this chapter have been complied with;

"(2) it is for the best interests of the creditors and is feasible;

"(3) the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of a bankrupt; and

"(4) the proposal and its acceptance are in good faith and have not been made or procured by means, promises, or acts forbidden by this title.

"Confirmation of an arrangement shall not be refused solely because the interest of a debtor, or if the debtor is a corporation, the interests of its stockholders or members will be preserved under the arrangement."

It appears from the referee's certificate that he was satisfied that the debtor's plan met all these requirements. While the plan had been affirmatively approved or accepted by only a small majority in number of unsecured creditors there were apparently no affirmative refusals to accept the plan although counsel for the three creditors now petitioning for review participated in the taking of evidence and impliedly was objecting to the confirmation of the plan.

It will be noted that the referee also affirmatively found that the plan was fair and equitable. Such an additional finding was required under section 766 until the amendment of 1952, which was apparently not brought to the attention of the referee by counsel during the proceedings before him. It will be noted that the requirement that the debtor must satisfy the court that the plan is also fair and equitable has been eliminated by the 1952 amendment to section 766. And it is said that the amendment was made by Congress subsequent to and possibly in view of the decision in Case v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110. That seems now to be immaterial here. See Collier on Bankruptcy, Vol. 8, 1952 Supp. 14th Ed. p. 64.

The principal point of law raised by counsel at the hearing related to the proper construction or meaning of the word "feasible" as contained in section 766. The referee found that the plan was feasible. He did not discuss the meaning of the word but apparently understood that it meant only that what was proposed could be or would be definitely accomplished in that the funds necessary for a 20% payment to all unsecured creditors would be, and in fact it is stated has been, made available for immediate distribution. Counsel for the objecting creditors, however, contends that the word "feasible" has a broader implication than that. He contends that it means not only that the money is available for the distribution to unsecured creditors but that the plan is feasible only if by what is now done for the benefit of unsecured creditors there is a probable prospect of the future successful financial rehabilitation of the debtor and its continued success in business operations. If the latter is required I would have difficulty in determining that the plan is feasible in view of the past history and probable future prospects of the company. But if the statutory requirement as to feasibility does not require a finding of probable future success, the confirmation of the plan should not be construed as a finding by the court that the business in the future will be successful. Creditors who may subsequently deal with the debtor must determine that for themselves.

It should be noted that the requirement as to feasibility of a plan was contained in the original section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and was also retained in Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., now relating to the reorganization of corporations. In many cases in this court under section 77B and later under Chapter X it is my recollection that the feasibility of the plan of reorganization did involve the broader characteristic now contended for with respect to the same requirement under Chapter XI. For illustration see Wayne United Gas Co. v. Owens Illinois Glass Co., 4 Cir., 91 F.2d 827; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237; Collier on Bankruptcy, 14th ed. Vol. 8, p. 1171. However I think the term "feasible" has a more limited meaning in Chapter XI, 11 U.S.C.A. § 766, by reason of the different subject matter that is involved. As heretofore noted, Chapter XI relates only to the interests of unsecured creditors and seems to have been in the nature of a substitute for a "composition" in the original Bankruptcy Act. And this seems to be the proper view in this case. As we have noted, the amendment of 1952 eliminated the requirement that the plan must be fair and equitable, although that point is not now involved here because the petition was not filed until after the effective date of the amendment and anyhow the referee has found the plan is fair and equitable. We are not concerned in this case with the interests of any creditors other than the unsecured creditors. And no secured creditor has filed any objection to the plan. The interests of the claimants for wages and taxes, which would have priority in payment, have been provided for by the deposit of $9,200. There is recent authority in support of the view that under these conditions there is no need to find that the plan is feasible in respects other than the assurances that the unsecured creditors will receive the 20% provided for them. It was so held in Re Admiral Container Corp., D.C.N.J., 95 F.Supp. 723, affirmed 3 Cir., 193 F.2d 330. See also Collier on Bankruptcy, 14th ed. Vol. 8, p. 1174.

Counsel for the objecting creditors advances other objections to confirmation in that he says the provisions of the chapter have not been complied with; but I fail to find any substance in that contention and agree with the referee in his finding on that point. It is also apparent, I think, from the mere statement of assets and liabilities of the corporation that the payment of a dividend of 20% to the unsecured creditors is in their best interests considered financially.

A more fully argued point against confirmation is advanced by counsel in his contention that the requirement of section 766 has not been met in that it does not sufficiently clearly appear that "(3) the debtor has not been guilty of any of the acts, or failed to perform any of the duties which would be a bar to the discharge of a bankrupt". Here counsel's more specific point is that on the testimony heard by the referee it should have been found by him that the debtor would be barred from receiving a discharge because it had failed to keep sufficiently clear and precise books of account. Under 11 U.S.C.A. § 32, sub. c (2) of the General Bankruptcy Act, failure to keep books of account from which the financial condition and business transactions can be ascertained, is a bar to a discharge in bankruptcy. The contention here made is purely of a factual nature. The referee affirmatively found from the evidence before him that there was no such failure to keep books of account as would constitute a bar to a discharge.

Under the applicable rule as to the scope of review here involved the findings of fact by the referee are to be treated as correct unless clearly erroneous. See 11 U.S.C.A. § 702; 11 U.S.C.A. § 67, sub. c, and General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53. On this point I have carefully considered the oral arguments of counsel and the briefs submitted, but I am not satisfied from the argument and the references to the testimony that the referee's conclusion on the fact was clearly wrong. There may be some basis for suspicion with respect to the motivation for the somewhat unusual offer of the brother of the principal officer of the debtor in being willing to supply the cash sum required for the payment of the 20% dividend to unsecured creditors. It is possible that his liberal offer may have been actuated by other than purely personal reasons. It appears that he is engaged quite successfully in a substantial business of the same nature in Florida under the name of The Dixie Company, and that there have been some business dealings between that Company and the debtor. It also appears that the brother is one of the lessees for a long term of a large warehouse building in Baltimore where the debtor conducted its business and a considerable portion of the present indebtedness of the debtor was incurred in alterations and improvements in this building which may possibly inure to the benefit of the original lessee, from whom the debtor sub-leased a portion of the building.

There is also quite a little confusion in the voluminous testimony caused by the fact that another business enterprise under the name of the American Fiber Mills, Inc., in which the debtor's president was largely interested, was also conducted in this same building and it also was unsuccessful and filed its petition for an arrangement about the same time that the debtor's petition in the instant case was filed. The referee, therefore, apparently for supposed convenience, heard testimony relating to the two debtors at the same time. The nature of the arrangement for the American Fiber Mills, Inc., is said to have been of a similar nature to that of the debtor in this case. It was confirmed by the referee without objection from any of its unsecured creditors. The objecting creditors here were not creditors of the American Fiber Co.

I do not find from the references to the evidence furnished by counsel for the objectors sufficient grounds to conclude that there was such a failure to keep proper books of account as would bar a discharge in bankruptcy. It affirmatively appears that the debtor did have a reputable certified public accountant to keep its books. While counsel for the objecting creditors here has referred to some rather isolated expressions in the testimony that may be thought to have raised a question as to the exact and complete accuracy of interrelated business transactions between the three companies they are not sufficiently impressive to justify

a holding that the findings and conclusion of the referee in this respect were clearly erroneous.

For these reasons I have concluded that the order of the referee should be and it is hereby *affirmed*.

■ Counsel for the debtor advances another point, technical in nature, to the effect that the petition for review should not be considered at all by the court on the merits as I have done. The debtor filed its petition for an "arrangement" under section 322 of the Act, 11 U.S.C.A. § 722, on April 28, 1953, and after the prescribed procedure and hearings the referee entered his order of confirmation on July 2, 1953. Ten days later on July 13 (July 12 being a Sunday and not counted) a petition for review of the order of confirmation was filed on behalf of the three objecting creditors. The petition was, however, rejected by the clerk or by the referee because it was signed merely by counsel and not by the objecting creditors themselves and hence was improper by reason of Local Rule 52 of this court.

Thereafter a petition for extension of the time for filing a petition of review was presented to me on July 15, 1953, in the usual course ex parte through the clerk, although counsel for the objecting creditors states that he had tried to present it to me on the afternoon of July 14, 1953, but that I had left my chambers for the day. On the face of the papers and without knowledge of the full nature of the prior proceedings, it did not seem unreasonable to extend the time for filing such petition for review until July 30th, especially in view of the fact that the time for filing a petition for review had only expired by one or two days, that it was midsummer, the usual vacation time, and that the objecting creditors were all out of state concerns. Thus, after examination of the applicable decisions I decided that the court had the power to grant such extension even though first applied for only after the expiration of ten days from the date of the order of confirmation, and I signed the order of extension.

It thereafter appeared that counsel for the objecting creditors had given no notice to counsel for the debtor of his intention to present the order for extension (as he possibly should have done under Local Rule 9 of this court) and that the debtor, on advice of counsel, had relied upon the finality of the confirmation, then some thirteen days past, and had incurred obligations based upon the supposed finality. An "accepting" creditor had likewise supposed the "arrangement" to be final and had given further credit to the debtor in reliance thereon.

Upon learning of the extension both the debtor and the "accepting" creditor filed petitions to have the order of extension rescinded. The objecting creditors thereafter filed the petition for review on July 28, 1953, within the time granted by the order of extension.

It is quite possible that I might, in the exercise of discretion, have declined to grant the extension if such application therefor had not been presented and signed ex parte and had all of the surrounding circumstances been brought to my attention, but I am not in accord with the proposition, urged by the debtor and found as a conclusion of law by the referee in his certificate, that this court was without jurisdiction to extend the time for filing the petition for review.

■ Under section 39, sub. c of the Act 11 U.S.C.A. § 67, sub. c, a petition for review of a referee's order must be filed within ten days "or within such extended time as the court may for cause shown allow". In order to ascertain the proper interpretation of this statute it must be read with a view of the prior practice and legislative history.

Prior to the inclusion of subsection c of section 39 of the Act, the procedure for review by the judge of an order of a referee was governed by General Order 27 (now abrogated) which did not prescribe any time within which a petition for review could be filed. Under this

the Fourth Circuit in the case of American Trust Co. v. W. S. Doig, Inc., 23 F.2d 398, held that the petition need only be filed within a "reasonable time". And this seemed to have been the general interpretation. See Collier, Vol. 2, 14th Ed. p. 1484.

The effect of subsection c was to prescribe a "reasonable time" under normal conditions, but to allow an extension of time in a proper case. The very reasons that may preclude a person from filing such petition within the ten days may also prevent the filing of an application for an extension within such time. The correct interpretation of subsection c is well stated in the case of Thummess v. Von Hoffman, 3 Cir., 1940, 109 F.2d 291, at page 292, wherein the court stated:

> "The intent of the provision is to place a limitation upon the time within which an aggrieved person can, *as a matter of right*, file a petition for the review of a referee's order, still leaving to the discretion of the court the allowance thereafter of *permission* to file such a petition * * *. If it had been the legislative intent to restrict the court's power in extending the time for filing to cases where action looking thereto is taken within the ten days * * * then Congress would have plainly so declared * * *." (Italics supplied.)

To like effect see In the Matter of Oakland & Belgrade Silver Fox Ranch Co., D.C.Cir., 26 F.2d 748; In re Madonia, D.C., 32 F.Supp. 165; Collier, Vol. 2, 14th Ed. p. 1482 et seq.

In view of the decisions on the merits it is quite unnecessary to discuss whether this court, although it had the power to grant extension on applications made after the ten days, should rescind such ex parte order of extension after all the surrounding circumstances of this case were brought to its attention.