**In re RECORD CLUB OF AMERICA, Debtor.**

**Civ. A. Nos. 82–1052 to 82–1055.**

United States District Court, M.D. Pennsylvania.

Aug. 24, 1983.

Nancy G. Grossman, New York City, for debtor.

John W. Thompson, Jr., York, Pa., for appellants.

## MEMORANDUM

RAMBO, District Judge.

Atlantic Recording Corporation (hereinafter Atlantic), Pickwick International, Inc. (hereinafter Pickwick), Keel Manufacturing, Inc. (hereinafter Keel), and Warner Electra Atlantic (hereinafter Warner) have

filed appeals to the order confirming the plan of arrangement of Record Club of America, Inc. (hereinafter RCOA). The history of RCOA's Chapter XI is now more than eight years old and it is helpful at this point to outline the relevant events of those years.

RCOA, the debtor, filed a petition for a reorganization under Chapter XI on December 23, 1974. Various meetings of the creditors were conducted during 1975 and January 1976. The plan of arrangement was filed on July 14, 1975 and amended on August 19, 1975. The creditors' meeting was continued generally on January 21, 1976. On June 29, 1975 the Pennsylvania Bureau of Consumer Protection was appointed to protect the interest of the consumer creditors, i.e. the club members of RCOA.

On October 3, 1980 upon application of the debtor, the bankruptcy court found that the debtor's plan of arrangement had been accepted by the requisite number of creditors and in the requisite amount. The first meeting of the creditors was closed. It should be noted that both Keel and Atlantic are certified as having voted to accept the plan of arrangement.

Notice was sent to the creditors and all parties in interest scheduling a confirmation hearing for October 30, 1980. The confirmation hearing of October 30, 1980 was continued until June 9, 1981. On June 8, 1981 the confirmation hearing was continued without date to reconvene. An order of October 26, 1981 scheduled the hearing on confirmation to reconvene on February 16, 1982.

The bankruptcy court ordered all objections to the confirmation of the plan to be filed by January 15, 1982. U.S.C.S. Bankruptcy Rules, Rule 11–38(c). None of the appellants in this case filed any objections.

The confirmation hearing was held on February 16, 1982 and after testimony was taken and arguments were made on confirmation the hearing was continued until April 20, 1982. The purpose of the continuance was to allow time for the development of an amendment to the plan concerning the consumer creditors. On April 15, 1982 the confirmation hearing was continued until May 11, 1982. The April 15 order required the debtor to submit to the court a written progress report on the status of efforts to dispose of the consumer credit claims. The progress report was to be filed by April 20, 1982. On April 19, 1982 a letter was mailed from the debtor to the creditors' committee about a proposed application to file an immaterial modification to the plan relating to the consumer creditors. The same day the application was filed with the court. On May 5, 1982 the confirmation hearing was continued until June 8, 1982.

The bankruptcy court allowed the application for the modification on May 17, 1982. The modification was found not to materially and adversely affect the interest of any creditor who had not in writing accepted it and therefore no notice was given or hearing held. *See* U.S.C.S. Rules of Bkry. Rule 11–39.

On June 8, 1982 the hearing on the confirmation of plan was resumed. There was discussion among the attorneys relating to a modification of the plan to remove the consumer creditors from the plan and treat them separately. The participants at the hearing included the attorney for the appellants in the present appeals.

The bankruptcy court issued the order confirming the plan on June 18, 1982. A number of notices of appeals were filed, but the only appeals remaining are the four which are the subject of this memorandum. The appellants raise a number of objections to the confirmation order or the way the bankruptcy court proceeded. These objections will be dealt with seriatim.

Local Rule of Court 401.8 describes the format and general approach that a party must use in preparing a brief. The appellants' brief fails to conform to the rule. The local rule assumes that an attorney admitted to practice is capable of organizing his arguments in a rational, clear and concise way. Sometimes this court receives a brief which leads it to question

that assumption. The brief filed by the attorney for the appellants is replete with misspellings, punctuation errors and incomplete sentences. The appellants' attorney apparently did not proofread the brief or did not do so adequately.

The arguments are amalgamations which often overlap and tend to repeat the nonessential points and fail to consider the critical ones. At one point the appellants' arguments are premised on a statute and cases which are thirty (30) years out of date. *See infra* at 698. Another argument is based on a section of the Bankruptcy Act which applies to Chapter X proceedings and not those under Chapter XI. *See infra* at 699. Most seriously the attorney for the appellants "edits" a transcript of a hearing before the bankruptcy court so that a distorted picture of the discussion is presented. *See infra* at 701–702. The "editing" borders on misrepresentation. *See* Code of Professional Responsibility DR 7–102(A)(5).

This court has little doubt that had the appellants' attorney provided a better brief the matters could have been resolved in a more timely fashion. Also if the attorney for the appellants had prepared a clearer presentation of the issues he might have chosen not to make some of the more frivolous ones. It is expected that any briefs filed with this court in the future will comply with the local rule.

The parties have requested oral argument on the appeals. The issues have been fully briefed in writing and oral argument would not appear to be particularly helpful at this point. The requests for oral argument will be denied.

The first objection to the plan is that the deposit which is to be posted by the debtor is inadequate to fund the plan. The bases for the objection are twofold: (1) the deposit allegedly does not include amounts to cover 16 or 17 claims, and (2) the deposit is based on estimates rather than the actual amounts found in the record.

The alleged shortfall of the deposit is asserted in part because of statements made by Sigmund Friedman, the President of RCOA, at the June 8, 1982 confirmation hearing. The statements occurred at the end of the hearing when the bankruptcy judge was questioning Friedman about the claims of record companies which remained unresolved. Transcript of June 8, 1982 hearing at 36. Friedman responded to the judge: "Phonogram, Phonodisc, Keel is of a somewhat different nature, but it is a fairly large claim." *Id.* The court and Friedman discuss whether proceedings are scheduled in any of the matters. The court then asked: "These are major claims?" *Id.* at 37. Friedman responded: "Well, Phonogram is a major claim. It is $420,000. The Phonodisc claim would only take a half-hour. That is for $116,000. Keel is, I believe, $97,000. There is a discovery motion to dismiss that, which has to be heard on the 17th. Those are the only three of any size. We have provided in the deposit for either seventeen or nineteen claims, which there are objections outstanding which have not been allowed or disallowed, and we have provided for that in the deposit." *Id.* The seventeen or nineteen claims plus the Phonogram, Phonodisc, and Keel claim total approximately $700,000. *Id.*

The appellants argue that "the Debtor is $70,000 short by his own calculations...." The $70,000 figure apparently is 10% of the $700,000. The facts contradict this assertion. The Phonogram, Phonodisc and Keel claims are included in the deposit. As to the other seventeen or nineteen claims that Friedman refers to, he said specifically "we have provided for that [the seventeen or nineteen claims] in the deposit." Transcript of June 8, 1982 hearing at 37. The appellants do not offer any specific information about the seventeen or nineteen claims which they assert are not included in the deposit. Their brief does not name the creditors whose claims are not accounted for in the deposit. The record contradicts the appellants' assertion and this portion of the objection to the confirmation of the plan will be denied.

The appellants suggest two claims which are not accounted for in the deposit.[1] One is a claim by Capitol Records in the amount of $750,000. The appellants appear to be referring to Capitol claim No. 96 which is in the amount of $805,123.42. This claim appears in the schedule of the deposits at the amount in which it was allowed by the bankruptcy court. The Capitol claim has now been considered by this court on appeal and the debtor and Capitol have entered into a stipulation to provide for the appropriate deposit when the claim is finally resolved.[2] *In re Record Club of America, Inc.*, 30 B.R. 413 (M.D.Pa.1983).

The second claim which the appellants suggest is not accounted for in the deposit is by Atlantic in the amount of $435,000. The claim by Atlantic was disallowed by the bankruptcy court because of a voidable preference and that decision has now been affirmed by this court and the United States Court of Appeals for the Third Circuit. Atlantic has as of this date returned the preference and Atlantic's claim has been reinstated. *In re Record Club of America, Inc.*, 38 B.R. 361 (M.D.Pa.1983). Since the claim has been reinstated, RCOA has increased its deposit sufficiently to account for the claim. *Id.* The appellants' arguments are moot.

The deposit proposed by RCOA adequately accounts for all the claims which are raised by the appellants as bars to confirmation. None of the alleged inadequacies in the deposit are sufficient to block confirmation of the plan.

The appellants' other dispute with the deposit involves the notion that the amount of the deposit was improperly calculated based on estimates provided in Friedman's testimony. While it is true that Friedman testified in terms of estimates, there is no basis in reality for the assertion that the plan relied on estimates. The appellants suggest as an example a figure of $50,000.00 for a priority claim by the Internal Revenue Service. According to the appellants, Friedman testified to either $50,000.00 or $54,000.00, but the claim was included on the schedule as $59,000. In fact, the Internal Revenue Service claim was scheduled at $59,299.38 for the purposes of deposit. The record shows that the deposit was determined by reference to the precise amounts of the claims as they were established at the time the confirmation of the plan was sought. The appellants' argument is frivolous.

The appellants assert that a priority claim in the amount of $34,000.00 due to the York County Tax Claim Bureau is not included in the deposit schedule. The $34,000.00 is apparently an amount in excess of the $103,616.28 which the parties agree RCOA owes. On January 22, 1982, the Tax Claim Bureau and RCOA entered into a stipulation which set the deposit to be posted in consideration of the tax bureau's claim at $103,616.28. *See* Doc. 172 of the record on appeal. The stipulated to deposit was to "constitute full payment of the aggregate principal amount of *all* delinquent taxes owed by RCOA to Tax Claim Bureau accounts." *Id.* at ¶ 3. The disputes concerning amount in excess of the deposit were to be resolved in later proceedings, *id.* at ¶ 4; and therefore the $34,000.00 was deemed covered by the deposit of $103,616.28.

The appellants object to the finding by the bankruptcy court that the plan has been accepted by the requisite number and dollar amount of creditors. On October 3, 1980, the bankruptcy court found that the plan of arrangement had been accepted by the creditors as required by law and the first meeting of the creditors was closed. The appellants say: "The record simply does not support the conclusion that after hearing on notice, the Plan has been accepted in writing."

What the record does support is that no appeal was taken of the October 3,

---

1. The two claims, Capitol and Atlantic, are not counted among the seventeen or nineteen claims considered above. *See* Brief of Appellants at 21.

2. This court's decision is on appeal to the United States Court of Appeals for the Third Circuit.

1980 order of the bankruptcy court. The order thus became final and cannot be attacked at this late date. *In re Graco, Inc.*, 249 F.Supp. 405, 407–08 (D.C.Conn.1965) *aff'd* 364 F.2d 257 (2d Cir.1966). Also on December 28, 1981, the bankruptcy court ordered that objections to confirmation must be filed by January 15, 1982. *See* U.S.C.S. Bankruptcy Rules, Rule 11–38(c). None of the appellants filed any objections even though they would have been in a position to know about the alleged lack of proper acceptances. The appellants had two opportunities to object to any defects they perceived in the acceptance of the plan. It is now too late to object.

█ The appellants also argue that the acceptances of the plan must be acquired in good faith, at the appropriate time and in the proper way. Even absent objections, the appellants assert that the bankruptcy court must investigate the acceptances and the method by which they were acquired to determine whether section 366(4) was complied with by the debtor. As an example of the alleged bad faith, the appellants apparently point to the fact that the creditors' committee recommended on two occasions that the debtor should be liquidated and then changed their position and supported confirmation.

The change of position by the creditors' committee vis-a-vis confirmation of the plan is irrelevant. The committee members have the right to alter their opinion of the plan as changes are made or as circumstances vary. The appellants point to no other instances of allegedly improper actions by the debtor related to the acceptances. The bankruptcy court cannot be expected to conjure up objections to the acceptances. This objection has no merit and will be denied.

The appellants' next objection seems to be a combination of questions about the feasibility of the plan, whether the plan is in the best interest of the creditors, and an allegation that the debtor used prohibited practices in settling claims. The argument seems to be twofold: first, an outstanding counterclaim against Capitol for $1,000,-000.00 would, if successful, provide funds which would make liquidation more attractive than an arrangement; and, second, the waiver of administrative claims by the debtor-in-possession, counsel and other agents of the debtor in the case of an arrangement (but not liquidation) is a prohibited activity.

The counterclaim against Capitol was part of a response to a petition by Capitol seeking to reclaim certain matrixes [3] from RCOA. *See* Answer to Application to Reclaim Property filed on July 16, 1975. The counterclaim was first asserted by RCOA on July 16, 1975. On December 28, 1981 in accordance with Bankruptcy Rule 11–38(c), the bankruptcy court required any objections to confirmation of the plan of arrangement to be filed by January 15, 1982.

█ In its memorandum of January 25, 1983 in these appeals, this court determined that the four appellants had standing to appeal even though they had not complied with Bankruptcy Rule 11–38(c). *In re Record Club of America, Inc.*, 28 B.R. 996 (M.D.Pa.1983). The main pillar of that decision was the premise that Rule 11–38(c) could not prevent appeals from aspects of the confirmation proceedings which occurred *after* the deadline for filing objections established under the Rule. The issue of what effect a potential recovery on the counterclaim against Capitol would have on whether a reorganization or a liquidation would be in the best interests of creditors is a question which should have been apparent to the appellants in 1975. Prior to January 15, 1982, the appellants should have known that the counterclaim against Capitol was outstanding. They had ample opportunity to file an objection to the plan of arrangement in compliance with the bankruptcy court's order of December

---

**3.** Matrixes are the electroformed impression of a phonograph record that is used for mass producing duplicates of the original recording. Webster's Third New International Dictionary, G. & C. Merriam Company, Springfield, Mass. 1963.

28, 1981 and Rule 11–38(c). The appellants' failure to object in a timely manner acts as a bar to this issue being considered on appeal.

 The conclusion that failure to comply with Rule 11–38(c) bars consideration by this court of objections to confirmation which might have been raised in conformity with the Rule and the bankruptcy court's order of December 28, 1981 can be analogized to the general rule that "an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). The Supreme Court stated the policy behind the rule as follows:

> For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding.

312 U.S. at 556, 61 S.Ct. at 721.

The same principle has been previously applied to appeals from bankruptcy referees to the district court. Judge Learned Hand said in *In re Pearlman,* 16 F.2d 20 (2d Cir.1926);

> While we have examined the record as though it were regularly before us, the occasion seems to us apt to restate the practice applicable to petitions for review of referees' orders. The proceeding is in substance an appeal from the court of

bankruptcy—i.e., the referee—to the District Court... [I]t is made the duty of referees to "make up records embodying the evidence, or the substance thereof, ... together with their findings therein, and transmit them to the judges." General Order XXVII requires the referee to "certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon." When the petition to review is lodged with the referee, it becomes his duty to prepare and certify his return as above prescribed, and *to it alone the District Court should look in disposing of the petition.*

*Id.* at 21–22 (emphasis added). *See In re Graco, Inc.,* 249 F.Supp. 405, 408 (D.Conn. 1965).

The burden of preparing the record so that the reviewing courts will have before them the evidence which supports an appellant's or an appellee's arguments is placed upon the parties. Rule 11–38(c) is part of the structure of the Bankruptcy Act and its supporting rules which attempt to assure that every issue is presented to the bankruptcy court in a context in which each affected party has had the opportunity to fully present its evidence. The appellants had their opportunity to object to the confirmation because the potential recovery from counterclaims would make liquidation more attractive and they failed to do so.

The Supreme Court has noted that certain circumstances might occur in which the appellate court would be "justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, *see Turner v. City of Memphis,* 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962), or where 'injustice might otherwise result.' *Hormel v. Helvering,* 312 U.S. at 557, 61 S.Ct. at 721." 428 U.S. at 121, 96 S.Ct. at 2877. The instant issue would not appear to present any such exceptional circumstances. The appellants had ample opportunity to raise the issue before the bankruptcy court and failed to do so. *See Teen-Ed, Inc. v. Kimball International, Inc.,* 620 F.2d 399, 401 (3d Cir.1980).

**698**

The appellants argue that the debtor has been involved in a "condemned practice," because the debtor and its agents have waived the deposits to which they would be entitled because of services they have rendered to the debtor. The allegation apparently is that the agents and the debtor coerced the creditors by threatening to assert their administrative claims unless the creditors agreed to a reorganization rather than a liquidation.

In support of their argument the appellants rely on *In re H. Krieger & Co., Inc.,* 40 F.Supp. 340 (D.Conn.1941). In *Krieger* the court said:

It must be borne in mind that the test of equity is not whether the creditors would receive less in liquidation. If the debtor says in effect "although the assets are fairly worth $8,500 to me I will try to get them for $6,000 in the hope that creditors will let them go for that rather than to accept the hazard and additional expense incidental to a liquidation", an arrangement on that basis is not equitable within the meaning of the Act. Thus to subject creditors to coercion is not consistent with equitable treatment.

*Id.* at 342.

*Krieger* was decided in 1941 and was based on the language of section 766 of Title 11 of the United States Code which required a plan under Chapter XI to be "fair and equitable." In 1952 Congress amended section 766 and specifically deleted the fair and equitable requirement. Act of July 7, 1952, 66 Stat. 433 (1952). The impact of the change is spelled out in the Senate Report. The report said:

The language 'fair and equitable' was derived from section 221(2) of chapter X, in which, for the purposes of a corporate reorganization, the requirement is sound and necessary. However, the fair and equitable rule cannot be applied in a chapter XI, XII, or XIII proceeding, if construed as interpreted in *Northern Pacific Railway Co. v. Boyd* 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913), and reaffirmed in *Case v. Los Angeles Lumber Products Co., Ltd.* 308 U.S. 106, 41

Am.B.R. (N.S.) 110, 60 S.Ct. 1, 84 L.Ed. 110 (1939), without impairing, if not entirely making valueless, the relief provided by these chapters. If so applied, no individual debtor or corporate debtor (where stock ownership is substantially identical with management) under chapter XI, and no individual debtor under chapter XII or XIII can effectuate an arrangement or plan by scaling of debts.

The fair and equitable rule was never applied in a composition proceeding under the former section 12 of the Bankruptcy Act, which has been replaced by chapter XI, nor is it practicable or realistic to apply it in a proceeding under chapter XI, XII, or XIII.

The amendment removes the 'fair and equitable' provision and by a paragraph added to each of the amended sections it is made clear that it shall not be applied thereunder.

Senate Report No. 1395, 82d Cong., 2d Sess. (1952). *See SEC v. American Trailer Rentals,* 379 U.S. 594, 611–12, 85 S.Ct. 513, 522–23, 13 L.Ed.2d 510 (1965).

It is also worth noting that Bankruptcy Rules 11–38(a) and (b) provide the procedural framework by which a claimant may waive his or her share of the distribution. The Rules were, of course, promulgated after the decision in *Krieger.*

The action of the debtor's agents in waiving their share of the deposit is in conformity with the Bankruptcy Act and the Rules. The appellants' argument that the said activities are a condemned practice is clearly in error.

The appellants argue that the bankruptcy judge in approving the plan must be satisfied that:

[A]ll payments made or promised by the debtor or by a corporation issuing securities or acquiring property under the plan or by any other person, for services and for costs and expenses in, or in connection with, the proceeding or in connection with the plan and incident to the reorganization, have been fully disclosed to the judge and are reasonable or, if to be fixed after confirmation of the plan will

be subject to the approval of the judge;
...

11 U.S.C. § 621(4). *See Brown v. Gerdes,* 321 U.S. 178, 182, 64 S.Ct. 487, 489, 88 L.Ed. 659 (1944). The problem with this argument is that section 621 applies to Chapter X of the Bankruptcy Act and not to Chapter XI which is the appropriate one in these proceedings. The requisites of confirmation under Chapter XI are set out in section 766. Section 766 has no subsection comparable to section 621(4). The appellants' argument is clearly incorrect.

The appellants assert that the debtor's plan of arrangement is not feasible as required by section 766(2) of the Act. The appellants support their assertion by reference to a 1943 decision from the United States District Court for the Eastern District of Pennsylvania. In the case of *In re Philadelphia & Western Railway Co.,* 51 F.Supp. 129 (E.D.Pa.1943), Judge Kirkpatrick determined a plan was feasible even though it depended on future earnings to pay interest on bonds which were to be issued. *Id.* at 130. The appellants cite the case to support the proposition that feasibility is judged as a practical matter on what is to be done after confirmation.

▇ RCOA proposes to post a deposit which is sufficient to pay ten percent of each unsecured creditor's claim excepting the consumer creditors and one hundred percent of the priority claims (unless waived). When a plan is premised on full payout at confirmation of the requisite amounts, then feasibility is *not* an issue. *In re Admiral Container Corp.,* 95 F.Supp. 723, 725 (D.N.J.1951), *aff'd.* 193 F.2d 330 (3d Cir.1952). *See In re Slumberland Bedding Co.,* 115 F.Supp. 39, 42 (D.Md.1953).

The appellants' objection as it relates to the method by which the consumer creditors of RCOA have been dealt with during this proceeding goes to whether the suggested escrow amount of $50,000.00 to be put up by RCOA is adequate to protect the consumer creditors. The objection seems to be rooted in the requirement of section 766(2) of Title 11 that an arrangement be "for the best interests of the creditors...." 11 U.S.C. § 766(2). Since the final plan for the treatment of the consumer creditors was not approved until May 17, 1982, and the issue was considered at the confirmation hearing held June 8, 1982, this court will review the treatment of the consumer creditors.

The debtor proposes to treat the consumer creditors outside the plan. The mechanism is spelled out in Exhibit "A" attached to the debtor's application of April 16, 1982. The mechanism was approved by the bankruptcy court on May 17, 1982. The bankruptcy court determined that the proposed alteration did not "materially and adversely affect the interest of any creditor who has not in writing assented thereto...." 11 U.S.C. § 764. It was not necessary therefore that the appellants receive notice and a hearing on the modification, since no creditor's interests were adversely effected. *See* 9 Collier on Bankruptcy 266 (14th ed.).

The procedure would be for RCOA to establish an escrow account of $50,000.00 funded either in cash or by a lien on property of RCOA or a combination of the two. When consumer claims are validated, they would be paid either in cash or in merchandise as appropriate. The control of the escrow would be jointly in the hands of RCOA and the Pennsylvania Consumer Protection Bureau. The bankruptcy court would resolve all disputes respecting the consumer claims which could not otherwise be resolved.

A review of Exhibit "A" raises questions as to whether the arrangement is in the best interests of the consumer creditors. The plan specifically says that: "The claims of club member creditors of the debtor corporation shall not be covered or affected by the Plan of Arrangement." Such a provision seems to mean that the claims of the consumer creditors will not be discharged upon confirmation and that they will be resolved outside the plan. Those consumers are still creditors of RCOA, *see* 11 U.S.C. § 707(1), and the bankruptcy court must be satisfied that the arrange-

ment is for their "best interests." 11 U.S.C. § 766(2). The protection of the consumer creditors' best interest can be assured only if the mechanism for paying their claims protects them.

The mechanism established under Exhibit "A" may not protect the best interest of the consumer creditors. Before this court can make a final decision on whether the proposal protects the consumer creditors, the appellee will be required to file an affidavit swearing that:

(1) The administrative costs of the proposal set forth in Exhibit "A" will not come from the $50,000.00 secured amount; and

(2) The twelve (12) month time limit established in paragraph 6 under Security in Exhibit "A" will not begin to run until the Consumer Protection Bureau has issued the release called for in paragraph 5 under Procedure.

The appellee will be given fifteen (15) days from the date of this order to file an affidavit providing the information requested.

The appellants argue that the debtor has been guilty of an act which would bar discharge of the bankrupt and therefore is not in compliance with 11 U.S.C. § 766(3). The act in question is the transfer of a computer from the debtor to the president and owner of the debtor, Sigmund Friedman, within four (4) months of the filing of the bankruptcy petition. The appellants argue that the transfer was a preference, the bankruptcy court did not permit an adequate exploration of the issue, and the transfer was not listed on the Statement of Affairs in the bankruptcy petition.

The appellants are in somewhat the same difficulty with this argument as they were with the issue involving the Capitol counterclaim. *See supra* at 9. The transaction involving the computer was known to the appellants years in advance of any hearings on the plan of arrangement and certainly in ample time for the appellants to have filed the proper objections to the confirmation of the plan as required by the bankruptcy court's order of December 28,

1981. *See* U.S.C.S. Rules of Bankruptcy Procedure, Rule 11–38(c). Normally such a failure would prevent this court from considering the issue on appeal. In this particular instance, however, the bankruptcy court proceeded to listen to some argument about the computer transaction at the hearing on confirmation held on February 16, 1982. Transcript of Hearing at 95–100, 115–16, 156–57 (Feb. 16, 1982). The argument was apparently allowed because United Artists Music & Record Groups, Inc. (another client represented by Thompson) had filed a timely objection.[4] Objection to Confirmation of Debtor's Amended Plan of Arrangement filed on January 12, 1982. Since the United Artists' objection put the bankruptcy court and the debtor on notice of the allegation about the computer transaction and the bankruptcy court took testimony, this court will consider the argument as put forward by the present appellants.

■ The appellants' argument is essentially that the transaction concerning the computer resulted in a preferential transfer in violation of 11 U.S.C. § 96. For a preferential transfer to be a bar to confirmation, the transfer must be a bar to discharge. 11 U.S.C. § 766(3). Possible bars to discharge are identified in 11 U.S.C. § 32(c). Section 32(c)(4) says that "the court shall grant discharge unless satisfied that the bankrupt has ... (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors, ..." 11 U.S.C. § 32(c)(4).

■ The burden of production and the risk of nonpersuasion remain at all times upon the party objecting to the discharge. U.S.C.S. Rule of Bankruptcy, Rule 407. Rule 407 requires the creditor to prove "the facts essential to his objection." *Id.* Once the essential facts are established the burden of production may shift to the debt-

---

**4.** The United Artists' objection was resolved by stipulation.

or if difficulties such as "proving the non-existence of a fact and of establishing a fact as to which evidence is likely to be more accessible to the bankrupt...." Advisory Committee's Note to Rule 407.

■ In the instant situation, the record shows that (1) a transfer occurred between the debtor and Friedman, (2) the transfer occurred within one year of the filing of the petition, and (3) the transfer involved the funds and obligations of the debtor. 11 U.S.C. § 32(c)(4), however, also requires an "intent to hinder, delay, or defraud [the debtor's] creditors."

The facts which the appellants assert are relevant to the debtor's intent are the failure to list the transfer in section 14 of the debtor's petition[5] and Friedman's statement at the October 30, 1980 hearing denying any transfer of a computer. *See* Transcript of Hearing on Confirmation at 148 (Oct. 30, 1980). The bankruptcy court, however, had before it some facts in addition to the two pointed out by the appellants. (1) The transfer was listed in the petition, but under section 19(b) which relates to withdrawals from the debtor corporation by an officer, director or shareholder of the debtor. (2) The transaction had been investigated by court appointed auditors and a court appointed receiver who had taken no actions or made any recommendations vis-a-vis the transfer. (3) The bankruptcy court also had the opportunity to hear and evaluate the testimony of Friedman at the hearing on February 16, 1982. *See* Transcript of Hearing on Confirmation at 95–100, 115–16 (Feb. 16, 1982).

Considering the facts in the record which reflect on the intent of Friedman and the debtor, this court cannot say that the bankruptcy court was incorrect. A particularly telling fact is that the transfer was listed in the petition. It is extremely difficult to envision an individual attempting a fraud by listing the transaction in one portion of the petition as opposed to another. The appellants' objection will be denied.

Thompson asserts that the bankruptcy court precluded him from presenting evidence of the issue of the transfer of the computer. Thompson quotes as follows from the transcript of the hearing held on February 16, 1982:

It is also pointed out to the reviewing Court that Counsel was precluded very directly, the Court: "That is bearing upon confirmation." (inquiry re: prohibitive acts regarding the computer) By Mr. Thompson: "Yes your Honor, either as a prohibitive act which may or may not be the case, and I am not prepared to address that immediately, but the transfer of an insider President, sole stockholder may be a prohibitive act and on the basis also the availability of that fund." The Court: "Let's put it this way. We will not deal with the objection except to say that the record is closed as far as evidence concerning them is involved." (2/16/82 Transcript, Page ——).

The transcript actually reads as follows:

MR. THOMPSON: With regard to my objections, your Honor, we elicited testimony concerning the involvement of Mr. Friedman and the computer, and suggest that there is evidence of record so that that issue is alive and before the Court for a determination on two bases.

THE COURT: That is bearing upon confirmation?

MR. THOMPSON: Yes, your Honor, either as a prohibitive act, which may or may not be the case, and I am not prepared to address that immediately, but the transfer of an insider, president and sole stockholder may be a prohibitive act, and on the basis, also, of availability of that fund.

THE COURT: Let's put it this way. We will receive no further evidence bearing upon the matter.

MR. THOMPSON: And that is fine. I am saying that as far as the record is concerned, I believe I have elicited sufficient information—

---

5. The appellants fail to note that the transaction vis-a-vis the computer was listed under section

19(b) of the petition dealing with withdrawals by stockholders, officers, etc. of the debtor.

THE COURT: We will not deal with the objection, except to say that the record is closed as far as evidence concerning them is involved.

MR. THOMPSON: That is fine, your Honor.

Transcript of Hearing on Confirmation of the Plan at 156–57 (Feb. 16, 1982).

Thompson's editing of the transcript is misleading. He has omitted relevant portions of his own comments and combined comments of the bankruptcy court so as to give an unfair and distorted picture of the dialogue. This court finds no merit in Thompson's argument that his presentation of evidence was prematurely cut off.

The "second issue" of the appellants' argument commencing on page 33 of their brief on appeal is to a great extent repetitious of their previous arguments. The court will consider only those arguments not previously raised.

This court must address the appellants' insinuation that there were improper communications between the debtor's representatives, the Pennsylvania Consumer Protection Bureau, the Creditors' Committee and Judge Wood, the result being that Judge Wood confirmed the debtor's plan for improper reasons. A brief review of the reality of the situation makes the appellants' allegations unseemly and inaccurate. Notice of the modification went to the Creditors' Committee and the Pennsylvania Attorney General's Office. Notice of this magnitude hardly seems consistent with secrecy. The record shows that the correspondence between the court and the parties was informative as to the progress being made on dealing with the consumer creditors and whether the parties had any objections to the modification. *See* Document 67 in record on appeal, Letter of Horace Stern filed on April 19, 1982; Document 71 in record on appeal, Letter of David Rosenberg filed on April 29, 1982. None of the appellants (or any other of Mr. Thompson's clients) was directly affected by the modification. His clients would receive exactly the same amount under the original plan and under the plan as modified. There does not appear to be any special reason why Mr. Thompson should receive notice or be involved in the development of the modification. Also undercutting the appellants' secrecy theory is the fact that the hearing on the confirmation of the plan held on February 16, 1982 was adjourned with the explicit purpose of dealing with the consumer creditors. Transcript of Hearing at 144–45 (Feb. 16, 1982). Mr. Thompson was present at the February 16 hearing and had ample notice that the matter of the consumer creditors was going to be worked on during the adjournment. Mr. Thompson's failure to keep informed about his cases is hardly a strong position from which to assail the integrity of Judge Wood.

The appellants' next argument relates to the length of time that the bankruptcy court has allowed the debtor to seek confirmation of a plan of arrangement. There have been two motions to adjudicate RCOA a bankrupt and to convert the proceedings to a liquidation. Motions to Adjudicate filed October 30, 1975 and July 18, 1979. Both of these motions were denied after a hearing. The orders were not appealed. No more recent motions to adjudicate have been filed. If the appellants felt that the debtor should be adjudicated a bankrupt they have had ample opportunity to file another motion in conformity with Rule 11–42(b) of the Rules of Bankruptcy. The appellants' objection to confirmation of the plan of arrangement based on the length at which the proceedings have continued will be denied.