**In the Matter of Cornell F. MINGUEY, d/b/a Cornell's Building and Excavating, and Barbara J. Minguey, Debtors.**

**Bankruptcy No. MM13–80–01555.**

United States Bankruptcy Court,
W. D. Wisconsin.

May 1, 1981.

Arthur Moglowsky of Bass, Goldstein, Moglowsky & Stein, S. C., Milwaukee, Wis., for creditor, Thorp Finance Corp.

David C. Moore of Brennan, Steil, Ryan, Basting & MacDougal, S. C., Janesville, Wis., for debtors, Cornell F. Minguey and Barbara J. Minguey.

## OPINION

ROBERT D. MARTIN, Bankruptcy Judge.

Thorp Finance Corporation has objected to the confirmation of the debtors' plan herein upon the sole ground that the plan proposes payments to Thorp, a fully secured creditor, which are calculated to produce a rate of interest less than that specified in the contract between Thorp and the debtors. A full hearing on the objection has been held and briefs have been submitted by Arthur Moglowsky of Bass, Goldstein, Moglowsky & Stein, S. C. on behalf of Thorp and by David C. Moore of Brennan, Steil, Ryan, Basting & MacDougall, S. C. on behalf of the debtors. Although the court has been assisted by the clear arguments of counsel and their able briefing, the question raised is extremely perplexing.

On or about July 7, 1978, the debtors contracted with Thorp for credit secured by a security interest in certain personal property and a mortgage in real property in Walworth County. The note given that day provided for installments payable at irregular intervals for 22 months following September 7, 1979, with a balloon payment due on August 7, 1981. The annual percentage rate of interest revealed by the Truth in Lending Statement which was a part of the note indicated an annual percentage rate of 18 percent. A judgment of foreclosure of the real estate mortgage was entered in the Circuit Court for Walworth County, Wisconsin, on February 18, 1980, providing for sale of the mortgaged real estate. A judgment for possession of the personal property was entered in the Circuit Court, Branch 1, Rock County, Wisconsin, on January 24, 1980. It has not been contended in this case that either judgment altered the rate of interest which Thorp was entitled to receive prior to the filing of the Chapter 13 case.

On October 16, 1980, the debtors, who are engaged in business, filed this case seeking relief under Chapter 13. On November 17, 1980, Thorp filed its proof of claim in the amount of $51,333.22, identifying its mortgage and security interest and claiming interest on the principal balance at the rate of 18 percent. By its claim, Thorp rejected the debtors' Chapter 13 plan. No objection has been made to the allowance of Thorp's claim.

On December 8, 1980, debtors filed an amended plan providing for payments to Thorp of $1,680.90 per month for 36 months. That payment was calculated to pay Thorp its principal indebtedness together with the payment of 10 percent on the unpaid balance during the life of the plan. Thorp did not accept the amended plan and filed the subject objection to confirmation on the basis that the amended plan fails to allow Thorp interest of 18 percent, contrary to 11 U.S.C. § 506(b), and therefore fails to comply with 11 U.S.C. § 1325(a)(1).

The debtors contend that 11 U.S.C. § 502 defines allowable claims to exclude any interest which has not matured as of the date of valuation of the claim. Therefore, although the sum of $51,333.22 claimed by Thorp is allowable, the demand for interest after the date of the claim in the amount of 18 percent on the unpaid balance represents unmatured interest which is not allowable. Debtors further argue that the language of 11 U.S.C. § 506(b) which provides for the allowance of interest on over-secured claims

does not, and cannot, require the payment of interest at a contract rate, but rather requires payment of interest at a court-approved rate for the purpose of assuring the secured creditor the receipt of the present value of its allowed claim.

Section 1325(a)(1) states:

(a) The court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title . . . .

Section 502(b)(2) provides:

(b) Except as provided in subsections (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
(2) such claim is for unmatured interest . . . .

Section 506(b) provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

An analysis of these sections supports unequivocally the position that an over-secured creditor is entitled to interest on its claim for the period that that claim remains unpaid. The only dispute is over how much interest must be paid. Section 506(b) can be read to allow "interest on such claim . . . provided under the agreement under which such claim arose" while § 502 provides that a claim objected to shall be allowed "except . . . unmatured interest" which would suggest that although interest must be allowed upon the claim, the claim itself cannot contain interest that has yet to mature.

Thorp's claim must not be read as seeking the allowance of unmatured interest. It is a claim for the current indebtedness. That is how the claim is prepared and must rea- sonably be construed. There should be no confusion arising from the inclusion of a request for interest under § 506(b) on Thorp's proof of claim as filed. That claim should be and is allowed in the amount of $51,333.22 in the absence of any objection. To find otherwise, would open the possibility of paying interest as required by § 506(b) on an allowed claim which already included unmatured interest.

The meaning of § 506(b) remains the sole consideration. Does the clause "provided under the agreement under which such claim arose" identify the "interest on such claim" or only the "reasonable fees, costs or charges"? If interest stands unmodified by the clause relating to the agreement, then a reasonable rate of interest approved by the court should suffice. *In Re Smith*, 6 B.C.D. 424, 2 C.B.C.2d 77, 4 B.R. 12 (Bkrtcy.E.D.N.Y.1980); *In Re Lum*, 5 B.C.D. 1039, 1 B.R. 186 (Bkrtcy.E.D.Tenn.1979). If claimant is entitled to interest "provided under the agreement," Thorp must receive 18 percent.

The cases decided since the enactment of the Bankruptcy Code do not address the question directly. The Bankruptcy Act which preceded the Code had no specific authorization equivalent to § 506(b). The right of a secured creditor to apply proceeds of sale of secured property to interest accrued after the date of filing in bankruptcy where the proceeds were sufficient to·pay both that interest and the principal indebtedness was established by the United States Supreme Court in *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244, 25 Am.Bankr.Rep. 363 (1911). The Supreme Court further refined that general holding in the case of *Vanston Bondholders Protect. Com. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). In that Chapter X case which raised issues essentially similar to those in the present case, the court found that interest on unpaid interest for which provision is made by a mortgage should not be allowed as a claim in proceedings for reorganization of the mortgagor under the Bankruptcy Act. Justice Black for the court stated:

It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor. See *Sexton v. Dreyfus* ....

In this case, where by order of the court interest was left unpaid, we do not think that imposition of interest on that unpaid interest can be justified by "an application of equitable principles."

And he noted finally:

The extra interest covenant may be deemed added compensation for the creditor or, what is more likely, something like a penalty to induce prompt payment of simple interest. In either event, first mortgage bondholders would have been enriched and subordinate creditors would have suffered a corresponding loss, because of a failure to pay when payment had been prohibited by a court order entered for the joint benefit of debtor, creditors, and the public. Such a result is not consistent with equitable principles. For legal suspension of an obligation to pay is an adequate reason why no added compensation or penalty should be enforced for failure to pay.

Subsequent to the *Vanston* case, it was consistently held that although an over-secured party was entitled under the general rule to receive the contract rate of interest, equitable principles govern. *In Re New York, New Haven and Hartford Railroad Co.*, 304 F.Supp. 1121, 1133 (Conn.1969); *In Re Maryvale Community Hospital, Inc.*, 307 F.Supp. 304, 309 (Ariz.1969).

There is nothing in the language of the Bankruptcy Reform Act of 1978 which indicates an intention of Congress by its passage to change the result of the *Vanston* case and its progeny. One reading of § 506 which is rhetorically and grammatically correct would provide for the payment of interest to an over-secured creditor without any tying of that interest obligation to the specific language of the agreement. The other reading, suggested in this case by Thorp would, if applied in the *Vanston* case,

result in a decision opposite that reached by the Supreme Court. Upon the conviction that by its enactment, § 506(b) was intended to be a codification and not a modification of the existing law, I am compelled to conclude that the clause "provided under the agreement under which such claim arose" does not modify the word interest and applies only to "reasonable fees, costs or charges."

Bound as I am to apply equitable principles in determining the amount of interest to which Thorp is entitled, I find the record devoid of evidence that the interest rate proposed by the plan would not fairly provide Thorp the present value of its collateral as of the date this case was filed. Absent such evidence, I cannot find that the requirement of § 506(b) was not met by the plan proposed. Therefore, the objection to confirmation of the plan as violative of § 1325(a)(1) must be overruled and the plan confirmed.