**In re LADYCLIFF COLLEGE, Debtor Under the Act.**

**MARINE MIDLAND BANK, N.A., Creditor-Appellant,**

v.

**LADYCLIFF COLLEGE, Debtor-Appellee.**

**No. 85 Civ. 2251 (MJL).**

United States District Court, S.D. New York.

Dec. 20, 1985.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for debtor-appellee.

Walsh & Frisch, New York City, for creditor-appellant.

MEMORANDUM OPINION
AND ORDER

LOWE, District Judge.

Presently before the Court are cross-appeals from the order of the Bankruptcy

Court (Ryan, J.). For the reasons stated below we affirm the order.

## BACKGROUND

This appeal involves the application of a well settled principle of bankruptcy law to a truly unusual factual situation. The facts are not in dispute however the parties strongly disagree on how the law should be applied to those facts.

The Debtor Under the Act, Ladycliff College ("Ladycliff"), is a small college. On November 27, 1979 Ladycliff borrowed $370,000 from the creditor appellant-cross-appellee Marine Midland Bank, N.A. ("Marine"). The loan was a rollover and consolidation of existing debts owed by Ladycliff to Marine. The loan agreement on its face indicates that it is collateralized by "all collateral now held by [Marine] plus a mortage on vacant land on West Point Highway North of Station Road." The "collateral now held" consisted of various accounts and certificates of deposit etc. held by Marine. The odd factual twist occured when the mortgage was signed. The normal words of the mortgage form were crossed out in part and others added which state:

> WITNESSETH that to secure the payment of a portion of a total indebtedness of $370,000.00 to the Mortgagee to the extent of One hundred Fifty thousand and 00/100 ($150,000.00) DOLLARS lawful money of the United States, together with interest thereon, which is payable according to the terms of a certain note in the amount of $370,000.00 of even date
> . . .

Mortgage annexed as Exhibit "D" to the Hay Affidavit.

On December 22, 1981 Ladycliff filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code. At that time the total debt owed to Marine was $384,724.78. Of that total $357,435.57 represented unpaid principal on the $370,-000 loan and the remainder, $27,289.21, represented unpaid interest. The other collateral—the securities, certificates of deposit and savings accounts—were liqui-

dated yielding $171,973.83. That amount was credited against the outstanding debt owed to Marine, thus the debt was reduced to $212,751.95.

Marine filed a three-part Proof of Claim. First it claimed a $150,000 secured claim plus accrued pre-petition interest on that amount ($11,452.08) plus undetermined post-petition interest on that amount at 11½% per annum (the rate specified in the note). Second it claimed an unsecured claim for $51,298.87 which represents the remainder of the debt once the $150,000 secured claim plus the pre-petition interest thereon, and the proceeds from the sale of the other collateral are subtracted from the total due. Finally they claim an unsecured claim for costs and reasonable attorneys' fees.

Ladycliff moved in the court below to expunge the proof of claim to the extent that it states a claim for post-petition interest on the $150,000 and to the extent it states an unsecured claim for fees. The Bankruptcy Court, 46 B.R. 141, (Ryan, J.) granted expungement of the claim for post-petition interest but denied expungement of the fees claim.

Marine argues that the Bankruptcy Court erred in expunging the claim for interest because Marine is "oversecured" within the meaning of 11 U.S.C. § 506. Ladycliff claims that the Court erred in not expunging the fees claim because the clause of the loan agreement which allows recovery of fees in collection proceedings was allegedly not directed to bankruptcy proceedings. We deny both appeals.

## DISCUSSION

*Claim for Post-Petition Interest*

The applicable law is not disputed. Bankruptcy Code § 506 states in pertinent part:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured

claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

(b) To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(a–b).

■ This provision recognizes that a security interest creates a property interest in the collateral and protects that property interest. Under § 506 a creditor who is oversecured receives post-petition interest on the debt to the extent there is collateral available to pay the interest. Once the collateral is depleted, the creditor no longer has any property interest and therefore the payment of interest abates.[1]

The question in the instant case is whether Marine is an oversecured creditor or an under-secured creditor. Normally the determination of whether someone is oversecured is straightforward. The court places the amount of the debt on one side of a balance and places the value of the collateral on the other side. If the side with the collateral swings down, post-petition interest accumulates on the debt side until the balance swings level.

This normally simple equation has been lost in this case because of the awkward and ill-conceived wording of the mortgage. In fact the case has become somewhat of an intellectual quagmire in which both parties are lost.

Marine argues that its claim must be bifurcated into a secured element and an unsecured element. It contends that § 506(a) dictates that the secured element of the claim be severed from the unsecured element. Thus they conclude that the $150,000 plus pre-petition interest be severed from the remainder of the claim and that since the value of the mortgaged land was greater than the debt[2] that it should receive post-petition interest.

Ladycliff counters that the mortgage was intended to be part of the loan packages and cannot be severed. It argues that all of the collateral must be aggregated and all of the debt must be aggregated. It points to the language of the loan agreement to support its contention that the unified transaction must be judged as such.

As noted earlier, the conceptual problem occurs because of the language of the mortgage. A typical mortgage secures the full amount of a loan plus interest, but in the instant case the mortgage purports to limit the extent of the collateral to $150,000 plus interest. By Ladycliff's analysis the $150,000 must be placed in the balance with the proceeds from the other collateral and weighed against the full debt.

In its reply brief Marine strenuously argues that Ladycliff relies on false premise—that the mortgage limits the collateral. It contends that the mortgage does not " 'cap' the '[value] of the collateral'." Reply at 4. Rather, "[t]he plain language of the mortgage ... demonstrates that it was given to secure not only $150,000, as Ladycliff claims, but also interest on such sum." *Id.* This, Marine argues, allows unlimited recourse to the collateral in order to pay interest.

---

**1.** A creditor has a right to make a claim for any pre-petition interest which has accrued, but an unsecured or under-secured creditor has no right to post-petition interest. *In re Pine Lake Village Apartment Co.,* 19 Bankr. 819 (Bankr.S. D.N.Y.1982); *In re Goforth,* 24 Bankr. 100 (Bankr.E.D.Tenn.1982). Likewise, once the security of a secured creditor has been depleated by post-petition interest, interest stops accruing.

**2.** The actual value of the mortgaged land does not seem to be known. Part of the land was sold for $150,000 to McDonald Corp., apparently as the site of a new fast-food restaurant. $90,000 of the proceeds were used to retire a senior mortgage held by the New York State Dormatory Authority. The remaining part of the land was sold as part of a package deal and no separate value was assigned. For the purpose of this appeal the parties have assumed that the value of the collateral is more than the amount of the mortgage.

The import of Marine's argument is that if the balance is loaded as Ladycliff suggest, there would be some residual collateral which was not placed in the balance. That residual collateral would be the "plus interest" element of the mortgage. The counter-implication is that if the balance is loaded as Marine suggests—*i.e.* weighing the $150,000 separately—Marine would receive post-petition interest as an "oversecured" creditor while some of the principal debt remains unsatisfied.

■ We believe that both parties have missed the germane inquiry. Section 506(b) states in part "[t]o the extent that an allowed secured claim is secured by *property* the value of which . . . is greater than the amount of such claim . . ." 11 U.S.C. § 506(b) [emphasis added]. The real question therefore is what is the "property" which must be valued. As noted, in the case of most mortgages the "property" which is weighed is the whole value of the real property which is mortgaged, but in the case at bar the mortgage limited what is to be placed in the balance. Unquestionably the odd interliniation in the mortgage was intended to limit the exposure of the land. It is the mortgage agreement which governs the extent of the lien. 3 Collier, Bankruptcy ¶ 506.04[1] (15th ed. 1985).[3] The mortgage limited the extent to which the real property was at risk to "$150,000 plus interest." Marine's *property* interest in the land is thus limited to "$150,000 plus interest." It is that *property* interest which must be weighed in determining whether Marine is oversecured.

Marine actually reaches the same conclusion in its Reply brief when it argues: Under Code § 506(a), Marine has an "allowed claim secured by a lien on property in which the estate has an interest" and this claim "is a secured claim to the extent of the value of [Marine's] interest" in the mortgaged property. *The*

*"extent of the value" of Marine's interest is the amount specified in the mortgage: $150,000 plus interest thereon. Thus, Marine has an allowed secured claim for this amount.*

Reply Brief at 5 [emphasis added].

The only remaining question is "what is the value of $150,000 plus interest thereon?" Marine argues that this value is unlimited. To the contrary it is a fixed sum certain. Marine apparently believes that so long as the debt remains unpaid interest accrued and the value of the property ($150,000 plus interest) also increases. Marine's analysis places the proverbial cart before the horse. It must first show that it is entitled to post-petition interest before it may count it as part of the "plus interest" element of the property. Under the Bankruptcy Act rights are fixed at the time of the petition in bankruptcy. In the context of the case at bar the value of $150,000 plus interest must be determined at the time of the petition. *See In Re Philadelphia Consumer Discount Co.,* 37 Bankr. 946 (E.D.Pa.1984); *In re Tarrant,* 19 Bankr. 360 (D.Al.1982); *In Re Adams,* 2 Bankr. 313 (Bankr.Fl.1980); *Cf. In Re O'Gara Coal Co.,* 12 F.2d 426 (7th Cir. 1926). As of the date of the petition there was $11,452.08 in interest due on $150,000 of the loan, thus the value of "$150,000 plus interest" is $161,452.08.

■ While we believe that aggregation of the collateral and debt is the proper method of determining whether Marine is oversecured, under our analysis, even if we accept Marine's contention that the claim should be bifurcated, Ladycliff must prevail. By definition, Marine cannot be oversecured since the amount of the property to be weighed in the balance is necessarily exactly the same as the secured claim. Of course if we accept Ladycliff's contention Marine must also fail. Judge

---

**3.** As stated in 3 Collier, Bankruptcy ¶ 506.04[1] at p. 506–17 (15th ed. 1985) (emphasis added): Issues as to the extent to whch a lien in favor of the creditor secures certain obligations which form a part of an allowed claim may arise in the section 506(a) context, but *must be decided by reference to the underlying agreements or judgments and applicable state law.*

Ryan properly expunged the claim for post-petition interest.

*Claim For Fees*

■ The Bankruptcy Court refused to expunge Marine's claim for collection costs. Paragraph 15 of the Mortgage agreement states in pertinent part:

> That if any action proceeding be commenced ... to which the Mortgagee [Marine], by virtue of being Mortgagee hereof, becomes a party, the Mortgagor will reimburse the Mortgagee for its expenses ...

Judge Ryan properly held that such an unsecured claim for expenses is not barred by § 506(b). *United Merchants and Mfg. v. Equitable Life Assurance,* 674 F.2d 134 (2d Cir.1982). He then held that the clause was enforceable under the applicable state law.

Based on the record before us we cannot say that the order of the Court below was clearly erroneous or contrary to law. Accordingly we affirm.

## CONCLUSION

The Bankruptcy Court properly expunged Marine's claim for post-petition interest because Marine was not oversecured. The court also properly refused to expunge the claim for fees. The Order of the Bankruptcy Court is, therefore, affirmed without exception.

Because the parties cross-appealed and neither succeeded on its appeal, each party shall bear its own costs.

Affirmed. No costs.