In re Lilly C. ANDERSON, Debtor.

BANK OF HONOLULU, Appellant,

v.

Lilly C. ANDERSON and Carolyn Penna Winchester, the Trustee in Bankruptcy, Appellees.

BAP No. HI–85–1461–MeAE.

Bankruptcy No. 83–00089.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted April 25, 1986.

Decided Nov. 28, 1986.

Gregory P. Conlan, Chun, Kerr & Dodd, Honolulu, Hawaii, for appellant.

Terry Day, Brown & Johnson, Honolulu, Hawaii, for appellees.

Before MEYERS, ASHLAND and ELLIOTT, Bankruptcy Judges.

MEYERS, Bankruptcy Judge:

## I

The Appellant, Bank of Honolulu ("Bank"), appeals from an order of the Bankruptcy Court, which denied its motion for damages for the delay it encountered in receiving payment on its secured claim. The Bank's claim had been secured by real property of the estate. This real estate was sold by the Chapter 11 trustee and the Bank was paid all principal and expenses, plus interest calculated at the contract rate of 8¾% per annum through the date of payment. The Bank claims that this interest did not adequately compensate it for opportunities it lost during the time it was restrained by the Chapter 11 automatic stay from foreclosing on the property. We AFFIRM.

## II

### FACTS

The Debtor purchased a leasehold property interest located at 565 Portlock Road in Honolulu, Hawaii, from the Bank in 1978. The Bank financed the bulk of the purchase price under an "Agreement of Sale," which required monthly payments with the balance due at maturity on March 14, 1983.

After the Debtor defaulted in September 1980, the Bank sought relief in the Hawaii state courts. It received a favorable judgment, with commissioners being appointed to sell the property. Before this foreclosure sale could take place, the Debtor filed her Chapter 11 petition on February 18, 1983.

On April 11, 1983, the Bank filed a complaint to modify the automatic stay. After conducting a final hearing, the trial court found that the value of the real property of $1,760,000 provided adequate protection of the Bank's interest and denied modification of the automatic stay. In rendering this decision the trial court noted that the Bank was being forced to relinquish approximately $150,000 a year in income by being deprived of the opportunity to reinvest the amount due it from the Debtor. In light of this condition, the trial court ordered that if the Debtor wished to "assume" the Agreement of Sale she could do so only by making payment in full by October 31, 1983.

Apparently as a substitute for a full payoff of the Bank's position, on December 13, 1983 the trial court appointed a Chapter 11 trustee and charged her to sell the property. The trustee did arrange a sale of the property for $1,200,000, with the Bank receiving $1,024,483.32 on August 24, 1984, representing $755,711 in principal, $217,-033.99 in interest for the period May 11, 1981 through the date of payment and $51,-738.33 to reimburse the Bank for its actual expenses. *See In re Anderson* 51 B.R. 397, 399 (Bkrtcy.Haw.1985); *In re Anderson*, 56 B.R. 443 (Bkrtcy.Haw.1985); *In re Anderson*, 66 B.R. 97 (9th Cir. BAP, 1986). The interest portion of this payment was calculated using the contract rate of 8¾% per annum. This rate was used for the entire period, even though the obligation had no provision governing interest on any delay in payment after the maturity date on March 14, 1983.

On December 5, 1984, the Bank filed a motion seeking compensation for damages it claims it suffered because it was deprived of its right to foreclose on the Portlock Road property as of September 1, 1981. The Bank argued that if it had been allowed to foreclose it would have received $776,001.32, representing the principal balance of $755,711, plus interest of $20,-

292.32. It claimed that it would have then had the opportunity to re-lend those funds in the regular course of business at rates in excess of the contract rate of 8¾%. In making this claim the Bank conceded "that it would have some trouble in conclusively establishing the exact amount" of these lost opportunity damages. It asserted a claim for $107,271.33 in lost interest, which it calculated by using the Federal Funds Rate for the applicable period instead of attempting to determine the yield it would have achieved on loans made to its customers, in order to avoid "uncertainty" and "speculation." [1]

On October 7, 1985, the trial court filed its decision denying the Bank's motion for additional interest. The court found that the Bank had already received in full all benefits it had bargained for under the Agreement of Sale when it was paid interest for the entire term calculated at the contract rate. The court further found that the Bank's claim for delay damages was based on speculation and did not properly consider the benefit it received from the over $90,000 that the estate had expended in maintenance and other costs associated with holding the property prior to sale.

### III

### DISCUSSION

The Bank argues that the trial court erred in refusing to award additional interest to compensate it for any lost opportunities it suffered by the delay in gaining payment on its secured claim during the Chapter 11 proceedings. The Bank claims that such damages are required to be awarded under the landmark decision of *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984).

In *American Mariner*, the Ninth Circuit Court of Appeals held that an *undersecured* creditor who was stayed from repossessing its collateral is entitled, under the

concept of *adequate protection*, to compensation for the delay in enforcing its rights against the collateral. 734 F.2d at 435. This decision recognized that a secured creditor's right to foreclose on the collateral and to reinvest the proceeds has substantial, measurable value that is entitled to protection. *See In re Bear Creek Ministorage, Inc.*, 49 B.R. 454, 457 (Bkrtcy.S.D. Tex.1985).

The Ninth Circuit determined in *American Mariner* that *one method* of providing protection for this aspect of the creditor's "bargain" is monthly interest payments calculated at the current market rate on the liquidation value of the collateral. 734 F.2d at 435. But that court noted that the market rate is not the only rate that may be used, given the unique facts of each case guided by equitable principles. 734 F.2d at 432, 435 n. 12. The Eight Circuit has refined this concept so that:

> ... while protection of lost opportunity costs for going concern values may not be required in cases with a high chance of success, liquidation values, including lost opportunity costs, might be deemed protectable where the chance of reorganization is slight.

*In re Briggs Transp. Co.*, 780 F.2d 1339, 1349 (8th Cir.1986).

The Bank's claim for "delay damages" or lost "opportunity cost" payments is simply a request for postpetition interest payments calculated at the market rate. As a general rule, creditors are not allowed a claim for interest accruing on their debts during bankruptcy proceedings. Since the middle of the 18th century, bankruptcy law has provided that interest on debts does not accrue after a bankruptcy petition is filed. *Sexton v. Dreyfus*, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911) ("For more than a century and a half the theory of the English bankruptcy system has been that everything stops at a certain

---

1. The affidavit of Mr. Michael Tanaka, the Executive Vice-President and Cashier of the Bank, shows that the $107,271.33 was calculated using a simple interest rate averaging almost 11½%, which yields additional interest of $61,017.24 above that using the contract rate of 8¾%, plus $46,254.09 for compounding of interest commencing as of October 1, 1981.

date. Interest was not computed beyond the date of the commission.").

The rule developed not because of the statute, but as a *fundamental principle of equity. See 3 Collier on Bankruptcy,* ¶ 502.02 at 502–29 (15th ed.). The touchstone for all decisions determining the allowance of interest in bankruptcy reorganizations has been a balance of equities between creditor and creditor or between creditors and the debtor. *Vanston Committee v. Green,* 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946). Thus, under the Bankruptcy Act ("Act") the award of post-petition interest was dependent upon the equities of the case, with the bankruptcy court's findings being subject to reversal only for abuse of discretion. *Matter of Beverly Hills Bancorp,* 752 F.2d 1334, 1339 (9th Cir.1984).

This equitable balancing led to the general rule under the Act that secured creditors should be allowed interest where the value of the security exceeded the debt plus the accrued interest. *See Palo Alto Mutual Savings and Loan Ass'n v. Williams,* 245 F.2d 77, 78 (9th Cir.1957).

The approach found under the Act was continued in the Bankruptcy Code ("Code") in Section 506(b), which codifies pre-Code law that an oversecured creditor can assert its right to interest found in the agreement as part of its secured claim. *In re United Merchants & Mfrs., Inc.,* 674 F.2d 134, 138 (2d Cir.1982). *See Matter of Glenn,* 796 F.2d 1144, 1147 (9th Cir.1986). Of course, the allowance of any postpetition interest is limited to the extent that the value of the collateral is sufficient to satisfy the secured claim. 11 U.S.C. § 506(b). *See In re Briggs Transp. Co., supra,* 780 F.2d at 1347; *In re Ladycliff College,* 56 B.R. 765, 767 (S.D.N.Y.1985).

■ Under Section 506(b), when an oversecured creditor seeks interest on its claim, the bankruptcy courts apply the interest rate provided for in the contract. *Matter of 268 Ltd.,* 789 F.2d 674, 676 (9th Cir.1986); *Matter of Glenn, supra,* 796 F.2d at 1147; *Matter of Maimone,* 41 B.R. 974, 979 (Bkrtcy.N.J.1984). The contract rate is recognized without being subject to any "reasonableness" limitation. *Matter of 268 Ltd., supra,* 789 F.2d at 676. This statutory provision should be considered in conjunction with, and as a restriction on, the usual governance provided by the inherent equitable power of the bankruptcy courts to determine how estate assets are to be distributed, including establishing the validity of any claim for postpetition interest. *See 3 Collier on Bankruptcy,* ¶ 502.02 at 502–36 (15th ed. 1986); *Matter of Beverly Hills Bancorp, supra,* 752 F.2d at 1339. *But see Matter of Minguey,* 10 B.R. 806, 809 (Bkrtcy.W.D.Wis.1981) (Equitable principles govern over contract provisions).

■ Here the contract provided for interest at 8¾% per annum, with the outstanding balance of principal and interest becoming all due and payable on March 14, 1983. However, the agreement makes no provision for a post-maturity or "default" interest rate. Given this silence the bankruptcy court, sitting as a court of equity, will recognize that an oversecured claim is entitled to accrue a reasonable post-maturity rate of interest while the claim holder must forbear from collection efforts during the pendency of a reorganization case. *In re Berry Estates, Inc.,* 34 B.R. 612, 616 (Bkrtcy.S.D.N.Y.1983); *In re Hempstead Realty Associates,* 47 B.R. 998, 999 (S.D. N.Y.1985).

In its claim for additional interest to reimburse it for "delay damages", the Bank admits that it would have "trouble in conclusively establishing the exact amount" of these lost opportunity damages. It suggests that 11½% should be considered the appropriate rate to avoid "uncertainty" and "speculation". *See Midkiff v. deBisschop,* 574 P.2d 128, 131 (Haw.1978).

Our review of the bankruptcy court decision is to determine whether it abused its broad discretion when it determined that the contract rate of 8¾% per annum should be applied to the post-maturity period as well as the period prior to the default. The trial court considered the Bank's admission regarding the speculative nature of any such damages and that the Bank certainly

benefited from the estate's expenditure of over $90,000 in support of the real property prior to sale. We also note that the Bank's statement of its claim fails to adequately take into account the delay and additional expense it would have encountered in liquidating its claim by repossession and sale of the collateral, before it would have received proceeds available for reinvestment. *Compare In re American Mariner Industries, Inc., supra,* 734 F.2d at 435 n. 12.

The decision on appeal here is one vested in the broad discretion of the trial court acting in the traditional role as a court of equity. *In re San Joaquin Estates, Inc.,* 64 B.R. 534, 536 (9th Cir.BAP 1986). The Bank has presented no basis for the Panel to question the decision reached in this case.

In confirming the trial court's decision the Panel notes that of the Bank's total claim of $107.271.33 for delay damages, fully $46,254.09 was charged for compounding of interest calculated from October 1, 1981. The payment of "interest on interest" has long been held to be contrary to the equitable principle of bankruptcy. *See Vanston Committee v. Green, supra,* 329 U.S. at 166.[2] Even those courts which allowed compound interest have recognized that it is strictly a matter of equity subject to judicial discretion apart from any consideration of the presence or absence of contract provisions conferring such interest. *See In re Manville Forest Products Corp.,* 60 B.R. 403, 404, 405 n. 1 (S.D.N.Y.1986). Given the variety of conflicting equitable interests at large in this case and the admitted difficulty in conclusively establishing the amount of interest the Bank might have earned under different circumstances, then the trial court's discretionary decision not to award compound interest cannot be faulted.

The Bank also complains that the trial court did not allow it to present evi-dence at the hearing on its motion in support of the claim for delay damages. On this point it should be noted that under Bankruptcy Rule 8006 the Bank had the burden to designate the items to be included in the record on appeal. *Matter of Berge,* 37 B.R. 705, 707 (Bkrtcy.W.D.Wis. 1983). Here the Bank has not favored the Panel with a transcript of the hearing or any other evidence showing that this objection was presented before the trial court. Therefore, this record does not contain the documentation necessary for the reviewing Panel to have a complete understanding of the case. *See In re Payeur,* 22 B.R. 516, 519 (1st Cir. BAP 1982); *In re Record Club of America,* 38 B.R. 691, 697 (M.D.Pa. 1983). As the incomplete record does not support the Bank's claim of error, then we cannot consider the Bank's argument. *See In re Schnabel,* 612 F.2d 315, 318 (7th Cir.1980). In reaching this decision we note that the documents before the trial court included Mr. Tanaka's declaration setting forth the Bank's factual support for its claim, which appears to have been accepted without dispute.

## IV

## CONCLUSION

The Bank claims that the trial court did not adequately compensate it, under *American Mariner,* for the damages it suffered by the delay it encountered in receiving payment on its secured claim. We hold that *American Mariner* is relevant to the questions presented but not controlling. We are concerned here with the payment of a secured claim which must be made in light of the requirements of Section 506 of the Code. As the parties had not provided for a contractual provision dealing with post-maturity interest, then equitable considerations govern.

*American Mariner* deals with questions of adequate protection under Section 362 of the Code. These are addressed at a time when the outcome of the reorganization is

2. Hawaii itself has a long held policy adverse to the allowance of compound interest. *See* Section 478-7, Hawaii Revised Statutes (1976); *Bolte v. Akau,* 8 Haw. 742, 743 (1892). When compound interest is allowed in default situa-tions, it has been limited to the legal rate of interest which stands at 10% per annum. *See In re Chinese American Bank,* 36 Haw. 571, 598 (1943); Section 478-1, Hawaii Revised Statutes (Supp.1984).

usually unclear. The payments required to protect apparently *undersecured* claims are calculated to minimize the risk that might accrue from the further delay occasioned by the reorganization effort. The analysis and guidance provided in such situations may be helpful to a court of equity adjudicating the proper compensation to a party who has been delayed in realizing its claim. However, while *American Mariner* considerations may provide some guidance in determining the proper amount of secured claims, it is Section 506 and the usual equitable considerations that control.

Our review presents no reason to question the decision on appeal. The trial court appears to have properly exercised its broad discretion—no doubt aided by the perceptive clarity provided by judicial hindsight which has the advantage of seeing the actual value of the collateral and the time the liquidation process consumed.

AFFIRMED.