**KCC–LEAWOOD CORPORATE MANOR I, Appellant,**

v.

**The TRAVELERS INSURANCE COMPANY, Appellee.**

Civ. A. No. 89–0335–CV–W–1.
Bankruptcy No. 88–00346–W–11–DJS.

United States District Court,
W.D. Missouri, W.D.

Aug. 29, 1989.

D. Kay Summers, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for appellee.

Gerald P. Urbach, John Martin Klein, Geary, Stahl & Spencer, Dallas, Tex., Daniel J. Flanigan, McDowell, Rice & Smith, Kansas City, Mo., for appellant.

ORDER

WHIPPLE, District Judge.

The debtor (hereafter, "KCC") appeals an order entered February 8, 1989, by the late Honorable Dennis J. Stewart, Chief Bankruptcy Judge. On April 5, 1989, Judge Stewart partially granted KCC's motion for a stay pending appeal, essentially suspending operation of the February 8, 1989, order.

KCC filed its appellant's brief on April 21, 1989. The appellee (hereafter, "Travelers") filed its brief on May 5, 1989. KCC filed a reply brief on May 18, 1989. Also on May 18, 1989, KCC filed a motion to amend the record on appeal to include its motion, filed February 21, 1989, for leave to appeal. On May 30, 1989, Traveler's filed an answer to the motion to amend. In the answer, Travelers consented to amending the appeal record but only if its May 7, 1989, response to the motion for leave to appeal also is included in the amended record.

The February 8, 1989, order is somewhat peculiar in that it purports to confirm a reorganization plan, but only if specified conditions are met. The reorganization plan would be different from the one proposed by KCC because it would include a significantly different term. The order provides for confirmation to arise automatically if the conditions are satisfied and, necessarily, withholds confirmation if the conditions do not occur. The stay order, of course, effectively prevents both the fulfillment and failure of the conditions. Thus, at this point, the confirmation or denial of the plan which would be implemented has not yet occurred. Implementation of the plan, as outlined in the order, is speculative and probably doubtful because one of the conditions of the order is that it be amended by KCC. KCC objects to the suggested amendment, and easily could refrain from making the amendment.

The only certainty about the order so far is that it manifests Judge Stewart's intent to deny the plan which was proposed by KCC. By discussing the reasons for finding the proposed plan to be flawed, and providing for confirmation of an alternative plan, Judge Stewart obviously (though implicitly) was denying confirmation of the previously proposed plan. That denial is sufficiently clear to be considered upon appeal. The remainder of the order remains inchoate, however, and therefore is not sufficiently ripe to permit meaningful appellate review. For the reasons set forth below, the denial of KCC's proposed plan will be affirmed, and this matter will be remanded to the bankruptcy court for further proceedings consistent with this order.

## I. *Facts*

KCC filed a petition in the bankruptcy court January 25, 1988, seeking relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et seq.). KCC continues to operate as a debtor-in-possession because no trustee has been appointed. KCC is a limited partnership which owns an office building. The building is worth $1,600,000, secured by a 12.75% per annum promissory note issued by Travelers and worth $1,354,-797.10. Thus, Travelers is an over-secured

creditor. The property was increasing in value, and the company managing it is a specialist in managing distressed properties.

## II. *Statement of the Case*

KCC filed its first amended disclosure statement pursuant to 11 U.S.C. § 1125. The plan included repayment of the promissory note at a maximum 10% per annum rate, rather than the 12.75% contract rate. Travelers filed objections on August 10, 1988, to the disclosure statement and to the proposed reorganization plan. The bankruptcy court conducted a hearing on September 13, 1988, to consider approval of KCC's first amended disclosure statement and to consider confirmation of KCC's proposed reorganization plan.

The confirmation would be conditioned upon (1) circulation of the disclosure statement to creditors and other parties in interest, (2) certification of ballots cast upon the reorganization plan, and (3) submission of evidence that the requisite amount of capital contributions to be raised from KCC's limited partners was raised. After considering a motion submitted by Travelers requesting an additional finding of fact, Judge Stewart entered the February 8, 1989, order.

The bankruptcy court, in its order, accepted KCC's valuation of $1,600,000 of the property, thereby rejecting Travelers' appraised value of $1,800,000. The court also calculated the value of the note (for principal, late charges and interest to January 23, 1988, the date of the petition) to be $1,353,672.07. The court also reduced Travelers' $4,500 post-petition appraiser's fee to $1,125 on the grounds of reasonability, pursuant to 11 U.S.C. § 506(b). The value of Travelers' claim was established at $1,354,797.10. Finally, the bankruptcy court found that feasibility had been demonstrated by KCC. The order concluded:

> * * * In consonance with the foregoing, it is hereby
>
> ORDERED that the Debtor's First Amended Disclosure Statement be, and it is hereby, approved and shall be circulated immediately by the Debtor. It is further

ORDERED that the Debtor's First Amended Plan of Reorganization be, and it is hereby, confirmed on the following conditions:

(1) that, within 15 days of the date of this Order, the Debtor amend the Plan so as to provide for the payment, to Travelers' Insurance Company, of interest at the rate of 12.75 percent per annum on its secured claim of $1,354,797.10;

(2) that no creditors object in writing to the terms of this Order within 21 days of the date of filing hereof;

(3) that the Debtor receive additional capital from its limited partners of not less than $350,000.00 within 60 days of the date of entry of this Order and communicate receipt of said monies in a writing signed by the Debtor and its counsel and filed with the Court within 5 days of the receipt of said capital; ·

(4) that discharge of the Debtor be withheld until full consummation of the Plan of Reorganization;

(5) that this Court retain jurisdiction for all purposes until consummation of the Plan of Reorganization or until further order of the Court; and

(6) that, within 15 days of the date of entry of this Order, counsel for the Debtor file with this Court a completed copy of the attached form BC100–B

\*　　\*　　\*　　\*　　\*　　\*

KCC raises essentially two arguments. First, KCC argues that the February 8, 1989, order is a final order suitable for appeal. Second, KCC argues that the bankruptcy court erred in finding that Travelers, as an over-secured creditor, was entitled to receive the contract rate of interest. Related to that argument, KCC urges that the bankruptcy court erred by making an inconsistent finding that the proposed reorganization plan was feasible when the court conditioned confirmation upon applying a 12.75% interest rate rather than the 10% proposed rate. Finally, KCC asserts that the bankruptcy court should not have found that the contract interest rate was reasonable, and should not have found that an over-secured creditor is enti-

tled to accrual of interest at the contract rate pending confirmation of the plan.

In response, Travelers argues that the order cannot be considered final for purposes of appeal. Travelers also argues that KCC misconstrues the applicable statutes, and that using a "discount rate" of interest as proposed by KCC would not provide fair treatment to Travelers as required under 11 U.S.C. § 1129(b).

### III. *Discussion*

#### A. Final Decision

■ ·The Eighth Circuit Court of Appeals has identified three factors to be considered in determining whether a bankruptcy order is final: (1) The extent to which the order leaves the court nothing to do but to execute the order, (2) the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief, and (3) the extent to which a later reversal on that issue would require recommencement of the entire proceedings. *In re Olson*, 730 F.2d 1109, 1109 (8th Cir. 1984). As mentioned above, the February 8, 1989, order can be considered a final decision insofar as it implicitly denies KCC's proposed reorganization plan, but otherwise cannot be considered to be suitable for appeal.

The findings of fact and conclusions of law in the February 8, 1989, order necessarily preclude confirmation of the reorganization plan as it was proposed by KCC. The only reasonable construction of the order is that it is an implicit denial of the plan.

The implicit denial satisfies the Eighth Circuit test. First, there is nothing left to do with the order in regard to the plan proposed by KCC. The plan has been found to be fatally flawed under the law and therefore could not be confirmed so it was denied. Second, KCC (the aggrieved party) would be unable to get the relief it seeks under its proposed plan unless review is granted because the bankruptcy court has made clear that the plan would not be confirmed as submitted. That is, if this court does not review the denial now, it cannot reverse the denial and, thus, KCC

would be precluded from implementing its proposed plan. Third, if the bankruptcy judge's ruling were reversed only after a different plan was adopted, the entire proceedings (beginning with resubmission of the denied plan) would need to be commenced again.

■■■ Confirmation of a plan is a final order for purposes of an appeal. *In re Gonzalez*, 73 B.R. 754, 765 (N.D.Ill.1987). Where a plan is denied by a bankruptcy court order, the district court may exercise its discretion to hear an appeal of that denial, pursuant to 28 U.S.C. § 158(a). So, to the extent the order is a denial of KCC's proposed plan, this court will consider it on appeal.

Of course, the remainder of the February 8, 1989, order is not ripe for appeal because, by its own terms, it is not effective. Insofar as it concerns a new plan, the order sets conditions precedent to the order becoming effective. The conditions have not been fulfilled, nor have they failed, so there is no way to ascertain whether the order would have its proposed effect, i.e., to confirm a plan using a 12.75% rate rather than a 10% rate.

In the absence of the conditions failing or being fulfilled, review by an appellate court cannot help determine if the bankruptcy court's decision should be affirmed or reversed. For instance, would reversal mean that the suggested plan was not properly confirmed, or would it mean that the suggested plan was properly confirmed? Conversely, would an order affirming the decision mean the suggested plan cannot properly be confirmed, or would it mean that the suggested plan was properly confirmed?

The problem created by the use of a "conditional order" is obvious. Perhaps some slight time conservation and/or administrative ease occasionally may be served by setting conditions whereby the order automatically becomes effective upon fulfillment of the conditions. However, doubt prevails unless and until a subsequent order is entered to certify that the conditions are met and the order has become absolute. Neither the parties, nor the court, nor the appellate court, nor the public can be certain of what is required by the court at any given time. In this instance, a straightforward denial, supported by the bankruptcy court's reasoning, of KCC's proposed plan would have been preferred. The denial would require proposal of a new plan, which is what Judge Stewart conditioned his confirmation upon anyway. In the meantime, everyone would have known the status of the case precisely at any given time without needing to refer to or be aware of activity which may not be documented in the court file.

Setting conditions for court orders to be effective rarely would have any value. Those rare instances would be where the conditions are so virtually assured to be met almost immediately that they later could be presumed satisfied without certification. In such instances, administrative convenience and judicial economy could be served without leaving the doubt and lack of finality that accompanies such "conditional" orders.

In any event, the February 8, 1989, order certainly is a final order in regard to denying confirmation of KCC's plan. To that extent, this court has jurisdiction pursuant to 28 U.S.C. § 158(a). The remainder of the order, however, is not subject to appellate review because it has become neither effective nor ineffective, because the conditions within it have neither failed nor been fulfilled.

### B. Interest Rate

■ The relevant statutes are 11 U.S.C. §§ 506(b) and 1129(b). Section 506(b) is:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Section 1129(b) provides, in part:

(b)(1) Notwithstanding Section 510(a) of this title, if all of the applicable require-

ments of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

\* \* \* \* \* \*

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

\* \* \* \* \* \*

The primary disagreement on appeal is whether Travelers is entitled to the 12.75% contract rate, rather than the 10% maximum rate included in the proposed plan. The parties dispute how these statutes should be interpreted and applied where there is a contract rate on a note held by an oversecured creditor.

Judge Stewart attended the matter somewhat summarily, and correctly, in the February 8, 1989, order at page 3:

It is well established that, pursuant to section 506(b) of the Bankruptcy Code, an oversecured creditor is entitled to the contract rate of interest, "up to the point where it, when added to total principal to be paid and allowable costs, equals the value of the collateral." *In the Matter of Coburn*, 36 B.R. 550, 551 (Bankr.W.D. Mo.1983). The contract rate in this case is 12.75 percent. Travelers is entitled to that rate of interest on its claim.

There is ample support in law for this conclusion. The issue was discussed in *In re Bates*, 58 B.R. 915, 916–917 (Bkrtcy.W. D.Tenn.1986):

It is well settled that "post-bankruptcy interest is not allowed in ordinary bankruptcies and reorganizations." *In re Caudle*, 13 B.R. 29, 32 (Bankr.W.D.Tenn. 1981). See also, *e.g., Matter of Spencer*, 45 B.R. 1 (Bankr.W.D.Mo.1983), *In re Smith*, 42 B.R. 198 (Bankr.N.D.Ga.1984). An exception to this general rule is where, as here, a claim is fully secured by collateral which is valued above the amount of the claim. See 11 U.S.C. § 506(b) and e.g., *In re Caudle*, supra, *In re Venable*, 48 B.R. 853 (S.D.N.Y. 1985), *In re Morrissey*, 37 B.R. 571 (Bankr.E.D.Va.1984). According to the statute, and the majority of courts interpreting it, the amount of the allowed interest is that "provided under the agreement under which such claim arose." See also *Matter of Johnston*, 44 B.R. 667 (Bankr.Mo.1984), *In re Loveridge Machine and Tool Co., Inc.*, 36 B.R. 159 (Bankr.D.Utah 1983). In fact, according to *Collier on Bankruptcy*, only two courts addressing the issue have allowed the use of non-contractual interest where a contract existed. "In each of these cases, the bankruptcy judges improperly attempted to apply section 506(b) to determine the appropriate interest rate to be paid on secured indebtedness under a Chapter 13 plan." 3 *Collier on Bankruptcy* (15th ed.) ¶ 506.05.[1]

In *In re Loveridge Machine & Tool Co., Inc.*, 36 B.R. 159, 165 (Bankr.D.Utah 1983), the court said: "The overwhelming majority of courts which have interpreted or applied Section 506(b)'s provision for interest have held or assumed that the contract rate of interest would apply where there is a contract." The court cited 16 cases from 11 federal districts for that proposition of law.

These two cases, and those upon which they rely, are able to apply Sections 506(b) and 1129(b) harmoniously. The two stat-

---

1. The cases criticized in *Collier on Bankruptcy* were *In re Minguey,* 10 B.R. 806 (Bkrtcy.W.D. Wis.1981) and *In re Marx,* 11 B.R. 819 (Bkrtcy.S. D.Ohio 1981).

utes can permit a creditor to have the benefit of its bargain, that is, the contract interest rate on an oversecured debt—but only to the value of the collateral. The statutes both can be fulfilled simply because permitting contract rate interest (under Section 506(b)) is fair and equitable (as required by Section 1129(b)) when limited by the value of the collateral. A creditor who obtains security to protect the bargain ordinarily should retain access to the value of that collateral as set forth in the contract.

KCC discusses distinctions concerning application of interest rates in calculating the value of the claim, accrual after the petition is filed, and payment of the claim. However, the plan which KCC proposed, and which Judge Stewart rejected, did not provide such distinctions. It calls for minimum and maximum rates, but the maximum rate is 10%. The plan does not call for payment at the 12.75% contract rate at any time. As found above, Travelers is entitled to 12.75% at least somewhere in the plan, so failure to include it at all is sufficient to warrant denial of the plan. In the absence of any provision for the 12.75% rate, there is no need to discuss the various distinctions raised by KCC.

KCC also argues that the bankruptcy court's order necessarily was inconsistent in that it suggested KCC's proposed plan would be feasible with a 12.75% rate even though it was predicated upon a 10% rate. This matter also need not be decided because no plan with a 12.75% rate has been confirmed. As stated above, the only final action which has occurred is the denial of KCC's proposed plan with the 10% rate.

KCC argues that the bankruptcy court erred in finding that the 12.75% rate was reasonable. As noted in KCC's appeal brief, a bankruptcy court's findings of fact are not to be overturned unless clearly erroneous. A review of the record reveals substantial evidence to support the finding. The collateral is worth more than the value of the debt. When the creditor accepted the promissory note, it acquired a right to foreclose upon default and thereby it secured access to the value for which it bargained. The creditor should not be divest-ed arbitrarily of all or part of that value. The evidence supports the implied finding that the 12.75% rate is reasonable, so the bankruptcy court will not be reversed on that basis. Furthermore, having found that the 12.75% rate was not unreasonable, there is no need to examine the application of a discount rate or any other alternative interest rate, as urged by KCC.

## IV. *Conclusion*

The bankruptcy court's order is a "final" order for purposes of appellate jurisdiction only to the extent that it denies confirmation of the reorganization plan submitted by KCC. It is insufficiently ripe for appellate review in all other respects. For the reasons set forth above, the denial of confirmation will be affirmed. The status of the case, therefore, is that there is no proposed reorganization plan pending, so further proceedings in bankruptcy will be necessary. Perhaps sufficient time has elapsed since February 8, 1989, to require that the order be vacated so a new approach can be taken in accordance with any changed circumstances. That, of course, is a decision for the bankruptcy court to make.

It is

ORDERED that appellant's motion, filed May 18, 1989, to amend the record to include its motion to appeal is granted. It is further

ORDERED that appellant's motion, filed February 21, 1989, to appeal is granted. It is further

ORDERED that the decision of the bankruptcy court in its order of February 8, 1989, is affirmed insofar as it denies debtor's first amended plan of reorganization and, in all other respects, the order is not subject to appellate review. It is further

ORDERED that this matter is remanded to the bankruptcy court for further proceedings consistent with this opinion.